Good morning. The first matter for argument this morning is Noble v. Samsung v. Dick. The issue on this appeal is whether the plaintiff had constructive notice of the arbitration clause that was part of the written warranty agreement that came with his smartwatch. I think that by you just saying it contained in the written warranty agreement, at least tees up for me the first question I'd like to ask you. It's placed within the warranty agreement. Within the warranty agreement it has the clause for arbitration. And the clause for arbitration says it applies to disputes arising in any way from the limited warranty and then it has the words or the sale. How does the or the sale component have anything to do with the warranty? And I ask that question in so far as a consumer should have notice and why would they have notice of the alternative dispute resolution related to the warranty on some other subject that it would apply to a different subject? Your Honor, it's important in considering this question to distinguish between express warranties which can arise by statute, excuse me, and written warranty agreements which are not at all limited to provisions that relates strictly to those express warranties. Right, but in this case this warranty had many disclaimers as well, including disclaiming the warranty covering representations made at the sale. So how would a reasonable consumer expect that the arbitration clause within the warranty section would deal with things that you've disclaimed? And when I say you, I mean Samson. For several reasons. It's widely held and firmly established that contract provisions that come inside product packaging are enforceable and their existence inside the packaging is not, does not mean lack of notice. And the reason for that is modern commercial reality. Well that kind of sweeps a little broadly, doesn't it? I mean, are you claiming that if it was printed in micro print on a micro dot inside that it would be okay? Because it was inside the packaging, you could do that? No, there are limits. I'm not exactly sure what the line would be. So, here the district court looked at this and said, this is on page 97 of a 130 some odd page booklet that's not noted in the table of contents, it's not noted in the index. The title of the document gives no hint that there's an attempt to bind somebody to a bilateral contract. And so, you might not be on a micro dot, but you're certainly not present as a notice of an attempt to bind somebody in a bilateral contract the way the shrink wrap licenses have been in the past. That's what the district court's telling us. What is wrong with the logical reasoning of that, Mr. Dick? There's no law that a written warranty agreement contains only certain types of provisions and only unilateral provisions. In fact, it's routine with the case of the district court. So, your assertion is that this is really a warranty? It is a warranty and therefore a contract. Okay, well warranties are unilateral contracts, right? Do you have any law at all that says a warranty is a bilateral contract? There are certainly provisions that are included in written warranty agreements. Well, that gets to the root of a problem I've had in some of the discussion and discussion within the briefs of this case, and that is the characterization of a warranty as a contract at all. How is a warranty a contract unless it is, in fact, a provision of a contract that has some bilateral aspects to it? Otherwise, isn't it merely, as Judge Jordan suggests, a unilateral or perhaps even gratuitous promise? The issue really is about the written warranty agreement, and it's been widely held that written warranty agreements are not limited to things like disclaimers and limitations on express warranties. With respect, Mr. Dick, that is not responsive. Do you have any law that says that a seller can bind a buyer with a warranty? Warranties, my understanding is, and the law I've seen indicates that warranties are unilateral contracts. They are a promise from the seller. Do you have any law that says making a warranty binds a buyer? Yes, certainly. There's a law in New Jersey, the Kowalski case and the Cespa case. Both involve form selection clauses containing warranties, and those are held to bind the purchaser when they bring a lawsuit. Those are warranties, or are they form selection clauses which are something separate? Maybe we should take a step back. There's a definition. I mean, there is a definition of what a warranty is under New Jersey law. That's in the statutes, New Jersey Statute 12A2-313, etc., etc., and it says, any affirmation of fact or promise made by the seller to the buyer which relates to the goods. That's a statutory definition. Is there anything in there that talks about a promise from the buyer to the seller or a mutual promise? That's a statutory definition of an express warranty, which can arise completely independent of a written agreement. It can be a promise made in advertising or a floor sample. But we're talking about something express here, right? You're not saying there's an implied agreement here. Your assertion is that we wrote it down and that binds you, right? The assertion is that it's contained in a contract. That definition, by the way, of express warranty is contained in Chapter 2 of the UCC as an act of... The warranty is a provision of a broader contract? It's a condition of a broader contract. It is. It's a term of a contract, and it's foreign book law that somebody who's on notice of a contract, including a warranty, is bound by the provisions on notice. That's the rabbit in the hat. And what I was saying, on this issue of notice, Judge Shorten was talking about the physical placement as observed by the district court. My question is slightly different. Assume the placement is okay in terms of it's okay that it wasn't in the table of contents, et cetera. But isn't there a problem with this particular circumstance? Because this arbitration clause is in the warranty, and it's many pages within the warranty in response to sort of questions the consumer would look at. Why would a consumer believe that within the context of a warranty section, that the arbitration clause would bind that person to alternative dispute resolution for matters that don't relate to the warranty? How would they be on reasonable notice of that, those three words or the sale? Let's assume under your theory the placement is okay, it's within the warranty, shrink-wrap agreements are acceptable. We'll assume all that. But how would a reasonable consumer be on notice of that, or the sale language in there was something that they should also have noticed? In several ways, Your Honor. The law reflects the consumers when they open, and our common experience when you open a package with a consumer electronics good inside it, you expect that there will be a document with terms and conditions. But this condition appeared, it was within the warranty section is my point. There's a difference, you would agree, with someone seeking for relief based upon the warranty, whether it's the express warranty, my colleague and I discussing, the written warranty, or the limited warranty you're discussing. There's a difference between claims arising out of those warranties and representations made out of sale. So my question is, how would a reasonable consumer expect to be responsible to know those three little words in the context of all those pages that Judge Stewart just described and the district court mentioned? A consumer is on notice that a warranty is included and that a warranty is contractual in nature. The first page of this document instructs consumers to please read it before they use their product. The second page includes provisions, license provisions that have nothing to do with the warranty. The third page says the consumer is bound to do various things. The fourth page includes contractual terms with respect to the express warranty. The table of contents directs consumers to the standard limited warranty, a contract. Within that, a short number of pages after the beginning of that appears the arbitration clause. A short number of pages. Straightforward headings that comply with the FCC. A short number of pages. Yes. Is it on page 97? It's 10 pages into the standard limited warranty. Is it on page 97? And we better remind they're very small pages which can take about a third as much text as a regular page. Yeah. It's on page 97, right? It's on page 97 of a large book that includes many things. But your point is, and what I want to make, what I want to understand is, the pages you've indicated are small pages. Yes, they are. I assume they are small pages so the size is conducive to placement within the packaging. Is that correct? That's correct. So there are necessarily a greater number of pages to cover the subject matter than there would be with a package three feet by three feet, presumably. That's absolutely right, yes. All right. And what about the size of the font? The size of the font of the arbitration clause itself, the most operative provision, is in all capitalized text. It meets the New Jersey standard, although it doesn't have to. It meets the New Jersey standard for conspicuousness. It's important to remember also that SEC regulations require a single document. It doesn't have to. It doesn't have to. I'm puzzled by that statement. What's your assertion about your, do you feel you're bound by New Jersey law? Yes, I'm speaking about the conspicuousness requirements, which apply to specific disclaimers and things like that. They don't, by their terms, apply to other provisions of the warranty. Neither do they exclude other provisions being included in the warranty. It only says that certain kinds of provisions in that kind of a written contract. So your assertion is that you could have put anything anywhere in that booklet, anywhere, and you could have, by that, bound the purchaser to a bilateral contract. No, I don't think that's our position. Where's the end of your position, then? What's the logical extension of it? Well, the standard to look at here is reasonable notice of fair and forthright presentation. You have framed your position, I think, in your brief as a headache, in fact. The arbitration provision was not unreasonably hidden. Is that right? That's correct. What do we look to to determine what constitutes what is reasonably or unreasonably hidden? Well, it's instructive to note that this issue has not been decided in the context of the placement or formatting of an arbitration clause within a larger agreement. The standard has been elucidated in the connection with browser app agreements, and in that connection it's whether it's sort of actively concealed. So is it ultimately a question to be determined by what are reasonable consumer expectations? That's correct. What's the expectation of a reasonable consumer? And in this instance, a reasonable consumer who got three copies of the warranty, sued for breach of express warranty, was actively interested in a battery problem, which is discussed in that document. When you say this, this hasn't really been presented in this context before. It was presented in the Northern District of California on what looked like exactly these facts. And the Northern District of California found that the plaintiff there was not bound by, quote, inconspicuous contractual provisions of which he was unaware contained in a document whose contractual nature is not obvious, and it described Samsung's behavior as, in effect, engaging in, quote, stealth tactics. So is it really correct to say this hasn't been presented before? Because it looks like it has been, and it looks like it's been ruled on, and not just by the district court here. I was speaking about under New Jersey law, that decision you're referring to was an OCA, one of eight which presented almost identical facts, and the only one which decided that it was unenforceable because it was placed in a warranty. That ruling there was based on a California case, which is not binding in New Jersey. But New Jersey courts, or a court at least, have told us that the location of an arbitration provision is a relevant or even highly relevant consideration, haven't they? They have not made the decision on the basis of the location of an arbitration clause. It is formatting within a consumer contract. I think it's the Rockwell decision that I looked at, has language in it to the effect that the size of the print and the location of the provision has great relevance. It did. It's worth pointing out in that case there were two somewhat ambiguously linked arbitration clauses. More importantly, that decision did tell us what we ought to be looking at, don't they? More to the point, they instruct us as to what a reasonable consumer is going to expect. The Rockwell decision relied on the Attlees decision, which is principally and logically, if one thinks about it, exclusively about the wording and the language of an arbitration clause. One can imagine a situation in Rockwell, for example, where the placement was perfect in every way, but the wording did not meet the standard laid out in Attlees. The placement would be completely irrelevant. The basis for that decision, and every decision that is applied to Attlees, is the wording of the arbitration clause, which is very separate from what we're looking at here. The only case since Attlees to have considered the location of an arbitration clause, is called James v. Global Tail Link, a 2016 District of New Jersey case. It was a browse rat case and basically reiterated the fair notice, reasonable person standard for notice. All right. Thank you, Mr. Dick. We'll have you back on rebuttal. Thank you. Ms. Clattenberg? May it please the Court, my name is Rachel Clattenberg and I represent Plaintiff Appelli, David Noble. Did Mr. Noble read the manual? No. And Samson has not contested that he doesn't. I'm not sure. The record doesn't say whether he read the manual. It does say that he does not have actual notice and Samson has not contested that. But the law says if you choose not to read something, you're still bound by it, correct? I believe that applies if you've signed a contract. Didn't you say in your brief that he did not read? Yes. He did not read. And was not aware of. No actual notice of this, of anything in this manual. And the instruction on the cover, to be clear, that's a mild request to read. It doesn't say anything about terms and conditions. And if I could draw your attention to JA51 of the Joint Appendix Volume 2, this is the cover that a reasonable purchaser would see upon taking out the watch and the charger. Read the page again, please. JA51. This is a 2-inch by 3-inch booklet. And there's nothing on this cover that says anything about an agreement or a contract. As far as the size is concerned, the packaging does constrain the producer and the text publisher at least as to that quality, does it not? Yes. So it's not just the size and it's not just the number of pages that's a problem here. It's the fact that there's nothing on the packaging, there's nothing on the cover, there's nothing on the next page, there's nothing in the table of contents. There's nothing in the index and then there are 143 pages of small text. And at the first 90 or so pages we're familiar with what the document looks like and the number of pages between the cover sheet and where the arbitration clause is. But your client relies on warranty provisions as part of his cause of action, right? And why is it that the client should be able to rely on some of the warranties with a breach of express warranty and implied warranty as part of your causes of action? Why should he be able to get the benefit of those warranties or the breaches of them and not have to sustain the obligations that come with invoking those rights, which is arbitration? Your Honor, none of his claims arise from the limited warranty in this booklet. His claims are mostly of fraud and misrepresentation in the express warranty. But you have causes of action for express and limited warranty. Express warranties are the statements that Samsung made in advertising. I understand that. They're not in the booklet. I understand that. Let me talk to you about the representation. Is it your position, and you might have heard my questions to your adversary, that even if the arbitration clause were binding on the warranty provisions or the sale language in the arbitration clause, you're familiar with what I'm talking about, right? Yes. Would it be your position that your client would not have been reasonably, or I should say a reasonable consumer would not have expected to see an alternative dispute resolution clause for matters that were unrelated to warranty or product-based issues? Yes, Your Honor. If the court were inclined to hold that the arbitration provision is binding with respect to claims that arise from the limited warranty just in the booklet, that would not make a difference to Mr. Noble's case because none of his claims arise under that. And also, no reasonable purchaser would have noticed that an arbitration provision at the end of a warranty seeks to waive his right to sue in court on any claim, fraud, New Jersey Consumer Fraud Act misrepresentation. There's just no notice for that. And why is there no notice? Putting aside how far it is in the booklet, is it because the language is placed within warranties material and warranties deal with products as opposed to representations upon which a person relies to buy it? Yes. Is that the line you're drawing? Well, there are two reasons, Your Honor. First is, yes, that a purchaser's reasonable expectations about what a warranty contains, that it discusses the condition of the product and the limitations on when they can get that product prepared. They'd never think it was waiving their right to sue in court on other claims. And the second reason is notice of a warranty is not notice of any contractual agreement or terms because legally speaking, a warranty is different than a contract. In Gladden v. Cadillac Motor, which is a New Jersey Supreme Court case, and is cited in our brief at page 24, that discusses the New Jersey requirements for creation of an express warranty. There's no discussion of offer, acceptance, consideration, any of the classic contract requirements. And the New Jersey statute itself... Ms. Klattenberg, what about form selection clauses, things like that? Do you have a position on that? Can a producer of a good insert those into a warranty and have them be effective? These are basic contract principles, so they apply no matter what type of provision this is. If there's no other notice, if this were a form selection clause, it'd be the same thing. It would not be binding. So is it your position that in a shrink-wrap license, let's assume we weren't worried about placement and whether it was hidden or not. Is your position that even if it's conspicuous and it says on it, you know, if you use this product, you are agreeing to, that can't be lawful? No, no, not at all. This is just about mutual assent, which requires reasonable notice to the terms that you're being asked to agree to. So the problem isn't that this is in a warranty per se. The problem is that the only notice that Samson claims a purchaser has is the warranty, and that's supposed to give them notice of any contractual term. If there were reasonable notice, if there was something on the cover and they knew where this was found in the booklet, that would be binding. It doesn't matter that it's in a warranty. So you're agreeing that a warranty could include some bilateral provision? And still be a warranty? No, that term is not a warranty provision. It could be in a document that's called warranty, but as long as there's reasonable notice and a realistic opportunity for the purchaser to recognize it, there's also a bilateral contract term in a document that may be called a warranty. I just want to clarify, Ms. Anderson, did you just say that the problem in this case is not the fact that the arbitration clause is in the warranty? That's not a problem for me? No, that's a huge problem. Okay. I'm just saying, we're not saying that any provision that's in a document that's called a warranty is necessarily not binding. Okay, let's be a little more specific, though. It's a problem. Why is it a problem? What kind of a problem is it? Here, because there is no notice. And SAMHSA is relying – Well, then the problem is the lack of notice. The problem isn't the location of it, is it? Well, there are a lot of factors that go into whether a purchaser can be held to have notice of this. But that leads us back to the question of notice. What I'm trying to get at is whether we're talking about notice or whether we're talking about the contents of the instrument itself that is a contract or is part of a contract. We're talking about whether there's notice. And one way there could be notice is if it was a document that was called an agreement and a bilateral contract that said, you know, you are agreeing to the following. And it was in the table of contents in a shorter document, then yes, there may be notice. But here, we don't have anything that would put a purchaser on notice that this was an agreement or that they were being asked to agree to something with SAMHSA. And I'd also point out that another factor that shows there is a reasonable notice is that a warranty does not require privity, but a contract does. And here, SAMHSA is seeking to bind this purchaser. Mr. Noble has no direct relation with SAMHSA. Why would he ever, and why would any reasonable purchaser expect to be bound contractually to a remote manufacturer that they have no direct relation to? If that's your argument, then that proves too much, doesn't it? Then you just said shrink-wrap agreements are all bad because I'm a consumer and why would I be entering into an agreement with somebody I bought a product from? No, that's just another factor that shows another reason he wouldn't expect to find this term in there without something else pointing to it. I'm not sure I follow that. I mean, at the get-go, I thought you had agreed that you weren't attacking the idea of shrink-wrap. I'm not attacking the idea of shrink-wrap. Then what does your last argument go to, if not to that? The last argument goes to why a consumer might expect a warranty, but would not expect a contractual provision bilateral agreement also included in that. This particular warranty arbitration clause has within it this opt-out provision. Yes. All right. So there are principles under New Jersey law that says a person who receives such documents are proved to come on tracts agreement. These documents are presumed to read them. There's a principle of law that say that. And if we apply that principle of law, and in this circumstance, they are presumed to have read this document, they would have seen the opt-out provision. Doesn't that make this particular provision with the warranty agreement different than all the other terms which would not be, as you were describing, as sort of unilateral responsibilities given by the seller? Doesn't the fact that there's this opt-out clause change the nature of this particular provision? Because there is authority by the consumer to opt out of the alternative dispute resolution tool? Two things on the opt-out. First, it doesn't change the fact that he had no notice of this in the first place and no reasonable purchaser would even know of this term's existence. So in that respect, the opt-out clause is irrelevant because no conduct can act as assent if he doesn't have any notice of this in the first place. And I think another point that you're maybe getting at is another reason that a reasonable purchaser would not expect this type of term in a warranty is, I mean, recognizes that this arbitration provision is different than a warranty because it does provide this opt-out, whereas the warranty provision doesn't have anything like that. What is the simplest step that Samsung could have taken here with regard to placing, for the purpose of putting a consumer on notice through use of the packaging or something attached to the packaging? At the very least, the table of contents needs to point out where this is, if it's going to be buried in a document this large. And the contents, that specific line of the contents should say essentially what? Agreement to arbitrate. There needs to be some notice that you're being asked to agree. I mean, even if you look at the text of this provision, it's not even phrased like an agreement. It's phrased as a statement, like a term of the warranty that is presumed to apply automatically. So if they had copied the exact language that's in their warranty agreement, put it at the end, and then in the table of contents simply had those words, that would be sufficient? If in table of contents they said, like this has two sections, right, we have health and safety, and then we have the warranty, and then section three, dispute resolution, or arbitration, or whatever you want to call that title. And at the end of the document, 140 pages in, it had this exact language. Would your position be that that was sufficient notice? As long as that notice, if that title in the table of contents said something about, something contractual agreement and arbitration, yes. Notice then for you comes from pointing the way in the table of contents. At the very least, yes. To a substantive provision itself. To a provision that you're being asked to bind yourself to. So is that how we make sure we're not treating arbitration clauses different than other contractual clauses? Because we can't ignore conception, and we're not supposed to give special care, right? Right. So this set off from your point of view is because warranties are not agreements. If there are going to be agreements, there needs to be a separate subsection even that says agreements. Yes. This applies to any contractual term that would be in this. It's not just arbitration provisions. Are you in a difficult position, by you I mean your client, because as Mr. Dick pointed out, Mr. Noble had this problem repeatedly with the battery on his smart watch. Returned it, returned it. There was multiple interactions. Should that play into any consideration of what constructive notice ought to be here for somebody, a consumer in those particular circumstances? Does that make a difference? Should it make a difference? No. I mean receiving three copies of the handbook where a provision is hidden doesn't give you any more notice. There's no cumulative effect here when you have them all hidden. One of those replacement watches came from Samsung. That's according to the allegations. Could we infer from that that the way their contact with Samsung occurred was because of the instructions within the warranty materials? No. If I call Samsung, contact Samsung, do you have a problem with the product? No, Your Honor. First of all, in the complaint it alleges that it was actually the store employee who suggested he do that. And we also know that he had no actual notice of this warranty. Thank you. So as with respect to Mr. Noble, he did not need this warranty provision. So that doesn't change the matter for him. Thank you. Are there no further questions? Thank you very much. Dick, we'll have you back on rebuttal. Thank you. The rule that's been articulated by Plaintiff's Counsel does not exist. There is no requirement that arbitration or any other particular provision be listed on the cover of a document. In fact, in Georgia law, it's not. She was asked by me to suggest what for her would be an appropriate and effective form of notice. I didn't hear it advanced as a rule. The point of your argument has been expressly rejected, as has the table of contents argument. Mr. Dick, are you rejecting the contractual understanding or the understanding of contract law that there has to be mutual assent? No, not at all. Okay. So if there has to be mutual assent, you'd agree there has to be notice of some kind that somebody has to be bound by something, right? Yes. Okay. So if we accept that your opponent's argument is there was no notice here, you know, you're not in a really good position to say that there's no basis for that argument. We're at least agreed on that, right? There has to be notice? There does have to be notice. Yes, there was. Okay. So then the question is, what notice is a good enough notice? Your assertion is there doesn't have to be anything in the table of contents. There doesn't have to be anything in the index. There doesn't have to be anything on the title page. There doesn't have to be anything to point the way at all, as long as it's somewhere in the document, no matter how long. I mean, on your theory, this could be the phone book, and if it shows up on page 388 in sufficient-sized font, it's in there and it's good enough. Do they make phone books anymore? No, that's not our position. It was on the cover. It was in the table of contents. Where was it on the cover? Where on the cover did it say? The word warranty, which has been held by all but one court. Did it signal the existence of a contract? Arbitration agreement? Of a contract that includes terms and conditions relating to the condition of the contract. You don't have a case that says that. If you don't have any case that says that the word warranty puts people on notice of abiding arbitration clause, do you? Because if you did, you'd have shown us. You've got a case that says the word warranty puts a consumer on notice of abiding arbitration clause? Yes. What is it? Give me a quote. Give me a quote where that shows up, Mr. Dick. Because if you had it, it would be in your briefing. I believe that it is. The quote is, the contractual nature of the document was entirely obvious. I'm getting the quote wrong. Because it doesn't say anything about you knew that this was abiding arbitration agreement. It says that the consumer was on notice to read that document, which is always the case. If the rule were that particular contract provisions had to be on the cover or the first page, that would essentially swallow the well-known rule that if you receive a contract, you are bound by its terms. And there are a number of cases that say that extends to warranties. It may be the case, but I guess we're talking past each other, that in the shrink-wrap world, a person is on constructive notice of certain things to which their attention is directed. But I get the feeling that we've slipped back. I thought there was at least agreement that there had to be some kind of notice about what you're getting to. But now I take your position to be that the word warranty puts all consumers on notice that they're about to be bound by an arbitration agreement. That's your legal position. No, the position is the totality of the circumstances. Was there adequate notice? And here, based on consumer expectations, the title of the book, the first three pages, the title of the book being warranty. Including the term warranty, right, and the please read direction. There are cases in California and Illinois that address that exact question in these exact circumstances. They don't rely solely on the word warranty.  There is nothing in the word warranty that would suggest some kind of similarity or that the term is synonymous with arbitration. Warranties are contracts. There's no dispute about that. We're talking about the deployment of words, yes. And that is those words that either do or do not place a consumer on notice, right? And my take of what your bottom line position is that the use of the word warranty should be enough to point someone to or even cause them to conclude that there is a waiver or that there is an arbitration provision and or a waiver of a right to go into court. No. Is that what you're saying, the word warranty? Notice is based on not simply the single word on the cover. It's based on the totality of circumstances, consumer expectations, first three pages, and all the rest. Anything further? All right. Thank you very much, Mr. Dick. Thank you very much, Ms. Klattenberg. We will take the matter under way.